UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RANDY J. HALL,

              Petitioner,

   -vs-

NORMAN BEZIO, SUPERINTENDENT,
GREAT MEADOW CORRECTIONAL FACILITY

             Respondent.

_____

**DECISION AND ORDER**
**No. 11-CV-0085(MAT)**

## I.   Introduction

*Pro se* Petitioner Randy J. Hall ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered August 17, 2005, in New York State, County Court, Steuben County, convicting him, after a jury trial, of Attempted Murder in the Second Degree (N.Y. Penal Law ("Penal Law") §§ 110.00, 125.25(1)), Assault in the Second Degree (Penal Law § 120.05(2)), Burglary in the Second Degree (Penal Law § 140.25(2)), Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03(2)), Criminal Mischief in the Fourth Degree (Penal Law § 140.00(1)), Petit Larceny (Penal Law § 155.25), and Tampering with Physical Evidence (Penal Law § 215.40(2)).

## II.  Factual Background and Procedural History

Petitioner, along with co-defendant Jose Gomez ("Gomez"), was indicted by a Steuben County Grand Jury and charged with Attempted

Murder in the Second Degree (Penal Law §§ 110.00, 125.25(1)), three counts of Assault in the Second Degree (Penal Law § 120.05(2)), Burglary in the Second Degree (Penal Law § 140.52(2)), Criminal Possession of a Weapon in Third Degree (Penal Law § 265.02(1)), Criminal Mischief in the Fourth Degree (Penal Law § 140.00(1)), Petit Larceny (Penal Law § 155.25), and Tampering with Physical Evidence (Penal Law § 215.40(2)).  Petitioner was also charged individually with one count of Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03(2)).[1]  The charges arose from a shooting and a stabbing incident that occurred in the City of Corning, New York on September 23-24, 2004.  See Ind. No. 2004-316 at Resp't Ex. A.

Prior to trial, Petitioner's counsel moved to suppress statements Petitioner made to police following the crimes.  After conducting a suppression hearing at which Officer Allan Salyerds and Investigator Wilford Peters of the Corning Police Department ("CPD") and Petitioner testified, the trial court denied Petitioner's motion in a written decision dated March 25, 2005. See Decision and Order of the Steuben county court (Hon. Latham), dated 03/25/05 (hereinafter "the Suppression Decision") at Resp't Ex. A.

---

[1]

The trial court subsequently dismissed this count, and it was never submitted to the jury.  T.T. 1308, 1675.

On June 20, 2005, Petitioner and Gomez proceeded to a joint trial in the Steuben county court before the Hon. Joseph W. Latham and a jury.

**A.   The Trial**

**1.   The People's Case**

In the summer of 2004, Manley Morrow ("Morrow") was selling cocaine out of the home where he was staying.  Gomez was Morrow's cocaine supplier.  Trial Trans. [T.T.] 654-655, 1060-1061.  In June or July of 2004, Joe Comfort ("Comfort") and P.K. Rossman ("Rossman") went to the home where Morrow was staying to buy drugs. Morrow gave Comfort $200 worth of cocaine, and Comfort told Morrow that his money was outside in his car.  Morrow accompanied Comfort outside, and Comfort quickly entered his car and drove away without paying for the drugs.  T.T. 658-659, 672-673, 1066-1067.  Following this incident, Gomez and Morrow discussed what had happened and agreed that Comfort "needed to be taken care of."  T.T. 660-661, 1067.

On September 23, 2004, Eric Gridley ("Gridley"), who had been living with Morrow that summer and who had witnessed Comfort's drug theft, saw Comfort at a party held at Schreiber's home in honor of his girlfriend Yvette Vann's ("Vann") birthday and her friend Kristy Neally's ("Neally") birthday.  T.T. 661-663, 670-671.  At some point, Comfort, Schreiber, and Rumsey left the party.  Gridley subsequently left the party, and told Morrow that he had seen

Comfort.   Gridley and Morrow then went to a dance club to find Gomez.  T.T. 665-666.  Gridley told Gomez that he had seen Comfort, and Gomez, who was with Petitioner, ordered Gridley to show him where he had seen Comfort.  Gridley escorted Gomez and Petitioner to Schreiber's house.  T.T. 667-668, 675-676.

By the time Petitioner and Gomez arrived at Schreiber's house, the only people home were Neally and Vann's young son.  T.T. 887, 889-890.   When Petitioner and Gomez asked for Schreiber and Comfort, Neally invited Gomez and Petitioner inside to await their return.   T.T. 890-891.   Vann and her friend, Michelle, then returned to the house.  About thirty minutes after Petitioner and Gomez arrived, Schreiber, Comfort, and Rumsey returned to the house.  Schreiber saw Petitioner in the bedroom, preparing lines of cocaine, and asked who he was.  At that time, Gomez, who had been in the bathroom, entered the bedroom.  T.T. 723-724, 896.  When Gomez approached, Schreiber asked him who he was.  Gomez asked Schreiber if he was Comfort, to which Schreiber responded in the negative.  Moments later, Gomez punched Schreiber in the head, and a fight ensued.  Gomez, who was armed with a knife, stabbed Schreiber under his left arm, in his left hip, and in his buttocks.  T.T. 727-728, 731-732, 992-993.  At some point during the fight, Gomez also stabbed Rumsey in his leg.  Rumsey retreated into the bathroom to treat his wound.  T.T. 940-941.

-4-

Meanwhile, Comfort, who had seen Gomez attack Schreiber, grabbed a lamp in an effort to join the fight.  Before Comfort could intervene, Petitioner, who had a gun, shot Comfort in the shoulder.  T.T. 729-730, 993-994.  Comfort tried to grab the gun from Petitioner's hand, but Petitioner shot off Comfort's finger. As Petitioner continued shooting the gun, Comfort kicked a door into Petitioner and ran out of the house.  T.T. 994-995. Petitioner chased Comfort outside to Comfort's vehicle, still firing his gun at Comfort.  T.T. 942, 997-998.  Chad Smith ("Smith"), who lived across the street from Schreiber, heard the gun shots and saw people come out of Schreiber's house bleeding. Smith called the police.  T.T. 687-687.  Petitioner and Gomez fled the scene.

Petitioner and Gomez went to Carl Humphries' ("Humphries") home nearby.  They broke Humphries' door panel and entered his house, waking him.  T.T. 1093-1096, 1104.  Gomez washed the bloody knife in the kitchen sink.  T.T. 1097.  Petitioner and Gomez then started to leave the house, but returned and told Humphries that the police were outside.  T.T. 1098-1099, 1145, 1155.  A short time later, Humphries looked outside and saw a taxicab.  He informed Gomez and Petitioner that there was a cab outside, and Gomez and Petitioner left Humphries' house and got into the cab.  T.T. 1099-1100, 1146.  Thereafter, the police stopped the cab, at which time Petitioner and Gomez opened the back doors and ran out of the cab.

T.T. 1100, 1114.   The police chased and caught Petitioner and Gomez.   T.T. 1114-1117, 1146, 1149, 1156.   The police recovered a knife from Gomez's person.   T.T. 1157.   A gun was recovered from underneath a vehicle in the area where Petitioner had fled. T.T. 1119.

Petitioner was taken to the police station, placed in an interrogation room and handcuffed to a ring on a wall.   Officer Salyerds sat in the room with Petitioner.   T.T. 1184.   At one point, Investigator Peters entered the room and asked Petitioner his name.   Petitioner stated, "I don't have to answer that without an attorney."   T.T. 1221, 1222.   Investigator Peters told Petitioner that pedigree questions, such as name, address, and date of birth can be asked in the absence of an attorney.   Investigator Peters then left the room.   T.T. 1222.

Officer Salyerds was still in the room with Petitioner playing a computer card game when Petitioner began crying and said that he stabbed someone at a party.   Officer Salyerds asked Petitioner if he wanted to make a statement, and Petitioner said that he did. T.T. 1186.   Officer Salyerds informed Petitioner of his <u>Miranda</u> rights by reading them from a written form and by providing Petitioner the form to initial and sign.   T.T. 1186-1187. Petitioner circled "yes" to each question asking if he understood his rights.   He also circled "yes" to the question asking if he wished to speak to a lawyer.   Officer Salyerds told Petitioner that

because of his response to that question, Petitioner could not give a statement.   Petitioner then stated that he wanted to give a statement.   Officer Salyerds told him that he would have to cross out his original response to that question, circle "no", and initial the change.   Petitioner did so and signed the statement. T.T. 1189.

Petitioner then told Officer Salyerds that he had been intoxicated at a party.   He stated further that a fight broke out and he stabbed someone, after which he ran off, threw the knife away, and was captured by the police.   T.T. 1190.   Petitioner's statement was reduced to writing.   T.T. 1191-1192.   Officer Salyerds gave the statement to Investigator Peters.   T.T. 1223.

Investigator Peters subsequently went back into the interrogation room to speak with Petitioner.   Investigator Peters read Petitioner's statement back to him and asked Petitioner about the shooting.   T.T. 1223-1224.   Petitioner initially claimed that he did not know who had been shooting or who was the target of the shooting.   Petitioner then told police that he had shot the gun after finding it on the floor.   Petitioner then described how he removed the safety and placed a round into the chamber of the gun. T.T. 1224-1225.   Petitioner, however, refused to discuss where he had actually obtained the gun, where the gun was then located, and Gomez's identity.   T.T. 1226.   Petitioner prepared a second written statement.   T.T. 1226-1231.

In his second statement, Petitioner claimed that he had been drinking at a club with some friends.  Petitioner left the club and followed his friends to a house where there about four girls.  As Petitioner was getting ready to leave the house, four men arrived and "all hell broke loose."  Petitioner did not know who started the fight, but everyone was swinging and throwing punches. Petitioner pulled out a knife with a black rubber handle.  After swinging the knife around, Petitioner fell to the ground and "ended up with a gun."  He took off the gun safety, chambered a round, and fired three or four times.  He was not pointing the gun at anyone in particular, but rather just shot in the general area of the fight.  Petitioner ran out of the house and tossed the gun away before he was stopped by the police an hour later.  Petitioner stated that he did not know any of the people in the house and had no "beef" with any of them.  According to him, no one else had a weapon.  T.T. 1228-1231.

After Gomez was arrested, Humphries saw a photograph of Gomez and Petitioner in the newspaper.  Humphries noticed that Gomez was wearing his jacket and shirt, and Petitioner was wearing one of his jackets.  Humphries testified that he did not give Gomez or Petitioner permission to take his clothing.  T.T. 1101-1102, 1105.

## 2.  Petitioner's Case

The defense presented no witnesses, and Petitioner did not testify.

B.   **Verdict and Sentence**

On June 30, 2005, the jury acquitted Petitioner of two counts of second-degree assault, but found him guilty of attempted second-degree murder, one count of second-degree assault, second-degree weapons possession, second-degree burglary, tampering with physical evidence, fourth-degree criminal mischief, and petit larceny. T.T. 1774-1775.

On August 17, 2005, Petitioner was adjudicated a second felony offender and was sentenced to prison terms of 23 years for the attempted murder count, 7 years for the assault count, 15 years for the weapons possession count, and 12 years for the burglary count, plus five years of post release supervision for each of those counts.  He was also sentenced from 1 ½ to 3 years for the evidence tampering count and one year each for the criminal mischief and petit larceny counts.  The sentences were set to run concurrently. Sentencing Mins. [S.M.] 3-4, 13-15.

C.   **Petitioner's Direct Appeal**

Through counsel, Petitioner appealed his judgement of conviction in the Appellate Division, Fourth Department on the grounds that: (1) Petitioner was denied his due process rights when the trial court refused to charge the jury on the justification defense; (2) the trial court improperly denied Petitioner's motion to suppress his statements to the police; (3) the trial court improperly denied Petitioner's motion to sever his trial from co-

defendant Gomez; and (4) the trial court limited Petitioner's right to effective representation when it granted the People's motion to prohibit counsel from arguing the justification defense in summation. <u>See</u> Resp't Ex. B.  The Appellate Division, Fourth Department unanimously affirmed the judgment of conviction on February 1, 2008. <u>People v. Hall</u>, 48 A.D.3d 1032 (4th Dep't 2008) (Resp't Ex. D); <u>lv. denied</u>, 11 N.Y.3d 789 (2008) (Resp't Ex. E). Petitioner filed a motion seeking to reargue his direct appeal, which was denied on December 31, 2008.  <u>Hall</u>, 57 A.D.3d 1530 (4th Dep't 2008) (Resp't Exs. G, H).

### D.  Petitioner's Motion to Vacate the Judgment

On or about October 27, 2008, Petitioner filed a motion, pursuant to N.Y. Crim. Proc. Law ("CPL") § 440.10 on the following grounds: (1) prosecutorial misconduct; and (2) ineffective assistance of trial counsel. <u>See</u> Resp't Ex. J.  The Steuben county court denied Petitioner's motion.  The court found that, with respect to the issues raised on direct appeal, those claims were procedurally barred under CPL § 440.10(2)(a).  The Court found that the remaining issues could have been raised on direct appeal, but unjustifiably were not and were therefore procedurally barred by CPL § 440.10(2)(c).  <u>See</u> Resp't Ex. K.  Petitioner moved for reargument, which was denied on March 13, 2009.  <u>See</u> Resp't Ex. M. Leave to appeal the denial of his motion was summarily denied, and

his application for leave to appeal the denial of his motion for reargument was dismissed.  <u>See</u> Resp't Exs. N, O.

> **E.    The Habeas Corpus Petition**

The instant habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) his trial counsel was ineffective because counsel convinced Petitioner not to testify at trial and failed to advise him about the necessity of testifying to establish a justification defense; (2) the trial court improperly denied his motion to suppress his statements to the police because Petitioner had requested to speak with an attorney; and (3) the trial court improperly refused to instruct the jury on the justification defense.  <u>See</u> Pet. ¶ 12, Grounds One-Three (Dkt. No. 1); Traverse (Dkt. No. 13).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## III. Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.,</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.,</u> <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995).

## IV.   General Principles Applicable to Habeas Review

For federal constitutional claims adjudicated on the merits by a state court, the deferential standard of review codified in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies. A habeas petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

## V.   Analysis of the Petition

### 1.   Trial Court Improperly Denied Motion to Suppress

At ground two of the petition, Petitioner argues, as he did on direct appeal, that he was denied his right to a fair trial because the trial court improperly denied his motion to suppress his statements to the police.  Petitioner argues that he did not make "conflicting statements" to Officer Salyerds during the interview, that he requested counsel, and that Officer Salyerds ignored his request.  See Pet. ¶ 12, Ground Two; Appendix at 5-7.  The Appellate Division, Fourth Department rejected this claim on the merits.[2]  See Hall, 48 A.D.3d at 1033-34.  Because this claim was

---

[2]

The Appellate Division, Fourth Department, found, in part, as follows: "[Petitioner] further contends that the court erred in refusing to suppress the

adjudicated on the merits, AEDPA applies.  Under that standard, Petitioner's claim is meritless.

Prior to trial, the Steuben county court conducted a <u>Huntley</u> hearing at which Officer Salyerds, Investigator Peters, and Petitioner testified with respect to the events surrounding Petitioner's arrest.  <u>See</u> Hearings Mins. of 03/25/05.  Officer Salyerds testified that he read Petitioner his <u>Miranda</u> rights from a written form, and after each right, Petitioner circled "yes" to indicate that he understood each right. H.M. 12. Officer Salyerds testified that the last item on the form asked Petitioner if he wished to speak with an attorney and Petitioner circled the answer "yes."  Officer Salyerds testified that he then told Petitioner that, since he had indicated that he wanted a lawyer, the interview would not take place.  Petitioner, who had previously asked to speak with Officer Salyerds about the incident, immediately told Officer Salyerds that he did not mean to indicate that he wanted a lawyer and that he wanted to talk.  Officer Salyerds told Petitioner that, in order to conduct the interview, Petitioner had to correct the form, which Petitioner did by crossing out his initial answer, circling "no" to the question, and initialing the

---

statement that he made to the police because he had invoked his right to counsel. We reject that contention . . . . [A]lthough [Petitioner] initially circled 'yes' on the <u>Miranda</u> form indicating that he wanted to talk to an attorney, he said 'never mind' and 'that's not what I meant' when the officer questioned about his response on that form.  [Petitioner] then immediately circled 'no' next to that question, placed his initials next to it, and signed the form.  The officers testified that [Petitioner] never requested an attorney.  We thus conclude under these circumstances that [Petitioner] knowingly and voluntarily waived his <u>Miranda</u> rights."

correction.  H.M. 13-14, 21-22.  Officer Salyerds also testified that at no time during the interview did Petitioner state that he wanted a lawyer or that he wanted to stop the interview.  H.M. 15. At the close of that hearing, the Steuben county court denied Petitioner's suppression motion.  See Suppression Decision at Resp't Ex. A.  The court credited Officer Salyerd's testimony over the account Petitioner offered, and found that Petitioner's original indication that he wanted an attorney was the result of a mistake that Petitioner immediately corrected.  See Resp't Ex. A at 128-129.  The county court found further that Petitioner did not unequivocally invoke his right to counsel.  Id. at 129.  The Appellate Division affirmed, concluding, in pertinent part, "that [Petitioner] knowingly and voluntarily waived his Miranda rights." Hall, 48 A.D.3d at 1033-34.

In a habeas corpus proceeding, state court factual determinations are presumed correct, and a petitioner bears the burden of rebutting such factual determinations by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091, 124 S. Ct. 962, 157 L. Ed. 2d 798 (2003).  Petitioner attempts to rebut the presumption by asserting that he never made "conflicting statements" to Officer Salyerds

during the interview, that he expressly requested counsel, and that Officer Salyerds ignored that request.  Traverse at 4.  This sort of inquiry, however, presents a credibility issue decided against Petitioner at the suppression hearing.  The trial court's findings were based upon a development of the record by means of a suppression hearing involving the testimony of multiple witnesses, including Petitioner.  As such, Petitioner has failed to rebut the presumption with clear and convincing evidence.  Habeas corpus relief on a claim that was adjudicated on the merits by a state court is precluded unless the adjudication itself was contrary to or unreasonably applied clearly established federal law, or was "based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254(d).

Applying this standard to the state courts' adjudication on the admissibility of Petitioner's statements, habeas corpus relief is not warranted.  The state courts concluded on the facts presented that Petitioner knowingly and voluntarily waived his rights, and agreed to speak with police without an attorney present.  This Court finds ample support for the courts' conclusions and that such rulings were not based on an unreasonable determination of the facts.

The Supreme Court held in Miranda v. Arizona, 384 U.S. 436, 467 (1966), in order "to permit a full opportunity to exercise the [Fifth Amendment] privilege against self-incrimination," an

"accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." To prove that a defendant validly waived his <u>Miranda</u> rights, the government must establish: (1) that the relinquishment of the defendant's rights was voluntary, "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception"; and (2) that at the time of the waiver, the defendant had a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986). The determination of whether the defendant knowingly and voluntarily waived his <u>Miranda</u> rights is made upon an inquiry into the totality of the circumstances. See <u>Fare v. Michael C.</u>, 442 U.S. 707, 724-25 (1979). The facts in the instant case do not reveal any evidence of coercion or intimidation. The record supports the finding that Petitioner understood his rights and indicated his willingness to speak without a lawyer present.

Accordingly, the Court cannot find that the state courts' adjudication of this claim contravened or unreasonably applied clearly established Supreme Court law. Nor can it be said that the state courts' determination was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Petitioner's claim is meritless and is therefore dismissed.

2.   **Trial Court Improperly Denied Request for Justification Instruction**

At ground three of the petition, Petitioner argues that the trial court improperly denied his request to instruct the jury on the justification defense.   Petitioner claims that the evidence adduced at trial was sufficient to allow the jury to consider the defense, and the trial court denied him his right to a fair trial by refusing to permit the jury to consider it.   See Pet. ¶ 12, Ground Three; Attachment at 8-9.   This claim, which Petitioner failed to properly raise in the state courts, is unexhausted. Because Petitioner no longer has a state court forum in which to exhaust this claim, the Court deems it exhausted but procedurally defaulted.

To fulfill the exhaustion requirement, a habeas petitioner must have afforded the state courts a fair opportunity to consider his federal claim.   Picard v. Connor, 404 U.S. 270 (1971).   This means that a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition.   See Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991).   In this case, Petitioner raised the instant claim on direct appeal, but failed to include the claim in his leave application to the New York Court of Appeals.   See Resp't Ex. E.   In his leave application, Petitioner argued that "[t]he trial court's verdict committed reversible error by failing to suppress [Petitioner's] statements made under custodial

-17-

interrogation." <u>Id.</u> Petitioner's failure to seek leave on the basis that the trial court improperly denied his request for a justification instruction renders the claim unexhausted. <u>See</u> <u>Grey</u>, 933 F.2d at 120 (where leave application argued one claim but omitted two others, petitioner "did not fairly apprise the court" of the omitted claims, rendering them unexhausted). Respondent argues that the record-based claim should be deemed exhausted but found to be procedurally barred from habeas review because Petitioner has no means to exhaust the claim in state court. <u>See</u> Resp't Mem. of Law at 24. The Court agrees. <u>See</u> <u>Grey</u>, 933 F.2d at 120-21 ("[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'") (quoting <u>Harris v. Reed</u>, 489 U.S. 255, 263 n.9 (1989)); <u>Spence v. Superintendent</u>, 219 F.3d 162, 170 (2d Cir. 2000) ("Because [petitioner] failed to raise his claim in the ordinary appellate process and can now no longer do so, it is procedurally defaulted.")); CPL § 440.10(2)(a), (c) (court must deny motion to vacate where claim was determined on the merits on direct appeal; barring new record-based claims that could have been raised on direct appeal but unjustifiably were not).

Because this claim is procedurally barred, it may only be reviewed if Petitioner establishes cause for the default and resulting prejudice, or that a fundamental miscarriage of justice

will result from the Court's failure to review the claim. See e.g., Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001); accord Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we must deem the claim [ ] procedurally defaulted.'") (quoting Aparicio, 269 F.3d at 90; alteration in Carvajal).

Petitioner has not alleged cause for the default, and, consequently, the Court need not consider prejudice resulting therefrom. See McCleskey v. Zant, 499 U.S. 467, 494 (1991) (failure to make a showing of either cause or prejudice defeats the petitioner's ability to overcome the procedural default on this basis); Murray v. Carrier, 477 U.S. 478, 496 (1986) (adhering to the cause-and-prejudice test "in the conjunctive").

Moreover, for purposes of the miscarriage-of-justice exception, Petitioner has made no showing that he is "'actually innocent' (meaning factually innocent) of the crime for which he was convicted." Carvajal, 633 F.3d at 108 (citing Bousley v. United States, 523 U.S. 614, 622, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998); footnote omitted). Accordingly, Petitioner's claim that the trial court improperly denied his request for a justification instruction is procedurally defaulted from habeas review and is dismissed on that basis.

### 3.   Ineffective Assistance of Trial Counsel

At ground one of the petition, Petitioner claims, as he did in his motion to vacate, that he received ineffective assistance of trial counsel because "trial counsel convinced [him] not to testify at trial through subtle yet intimidating insinuations, rather than properly communicating with Petitioner about the necessity of testifying in order to properly raise the defense of justification." <u>See</u> Pet. ¶ 12, Ground One;  Attachment at 3-4; Traverse at 1-3.  The Steuben county court rejected Petitioner's claim on a state procedural ground, pursuant to CPL § 440.10(2)(c) and did not reach the merits of the claim.  <u>See</u> Resp't Ex. N. Despite the state court's ruling, the parties do not maintain that the claim is procedurally barred from habeas review.  <u>See</u> Resp't Mem. of Law at n. 8; Traverse at 1-2.  In its supporting memorandum, Respondent explains that, "[ s]ince Petitioner's claim is based on allegations regarding advice he had received from his trial attorney, the basis of his claim would necessarily entail facts that do not appear on the record and, therefore, could not have been raised on direct appeal."  Citing <u>Garcia v. Lewis</u>, 188 F.3d 71, 77-82 (2d Cir. 1999), which holds that for a state ground to be adequate, a finding of procedural default must be supported by a "fair or substantial basis" in state law, Respondent asserts that, "it does not appear that the state court's procedural bar finding here was adequate to procedurally bar [Petitioner's]

claim." Resp't Mem. of Law at n. 8. Petitioner proffers, in sum and substance, the same argument in his Traverse. See Traverse at 1-2. Indeed, the alleged conversations between Petitioner and his attorney underlying this claim are matters *dehors the record*; however, the facts underlying this claim relate to the viability of the justification defense at trial. That particular issue was addressed at trial and was subsequently raised on direct appeal and determined to be meritless. See Hall, 48 A.D.3d at 1033. To this extent, the underlying facts related to the instant ineffective assistance of counsel claim are, arguably, set forth in the record such that Petitioner could have raised his ineffective assistance of counsel claim on direct appeal. In this respect, CPL § 440.10(2)(c) is "adequate" to procedurally bar the claim from habeas review. See e.g., Alston v. Donnelly 461 F.Supp.2d 112 (W.D.N.Y. 2006) ("where an ineffective assistance of counsel claim is record-based, C.P.L. § 440.10(2)(c) constitutes a procedural rule that is "firmly established and regularly followed" and thus "adequate.") (citing cases). In any event, because the parties have argued the merits of the claim, the Court reviews and disposes of the claim on the merits. To the extent the claim was never adjudicated on the merits, the Court reviews it *de novo*. See Torres v. Berbary, 340 F.3d 63, 68 (2d Cir. 2003) ("[i]f there is no . . . adjudication [on the merits], the deferential standard [under AEDPA] does not apply, and 'we apply the pre-AEDPA

standards, and review *de novo* the state court disposition of the petitioner's federal constitutional claims.'") (citing <u>Aparicio v. Artuz</u>, 269 F.3d 78, 93 (2d Cir. 2001)).   As discussed below, Petitioner's claim is meritless.

In order to establish ineffective assistance of trial counsel, a petitioner must show both that his attorney provided deficient representation and that he suffered prejudice as a result. <u>Strickland v. Washington</u>, 466 U.S. 668, 686-88 (1984).   Deficient performance requires showing that "counsel's representation fell below an objective standard of reasonableness," and that counsel's conduct had "so undermined the proper functioning of the adversarial process" that the process "cannot be relied on as having produced a just result."   <u>Id.</u> at 686, 688.

Prejudice requires a showing that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome."   <u>Id.</u>   Although the <u>Strickland</u> standard is two-pronged, a reviewing court need not address both "deficient performance" and "prejudice" where the petitioner cannot meet one of the two elements.   <u>See</u> 466 U.S. at 697 (noting that where the court can "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," which will often be the case, the court should do so).

-22-

Initially, the Court points out that Petitioner has provided no documentary proof -- in affidavit form or otherwise -- either in the state courts or in the instant habeas proceeding establishing how counsel advised him regarding the issue of whether he should testify or how the decision was ultimately made that he would not testify at trial.  Rather, he simply explains that, at some point before trial, he engaged in two "private conversations" with his attorney and, at the second conversation, "trial counsel convinced [him] to not testify at trial through subtle yet intimidating insinuations, rather than properly communicating with [him] about the necessity of testifying in order to properly raise the defense of justification."  Pet., Attachment at 3-4.  According to Petitioner, trial counsel's advice demonstrates counsel's "failure to understand the applicable law."  Id. at 4.  Notably, when Petitioner raised this claim in his motion to vacate, he did not provide any information detailing the conversations he had with his attorney.  In this respect, Petitioner has failed to offer any evidence that substantiates the truth of his allegations.  In any event, even assuming the truth of the allegations, Petitioner cannot demonstrate that his testimony, had he testified, would have altered the jury's verdict.  As discussed below, Petitioner's inability to make a successful showing of prejudice within the meaning of Strickland is fatal to his claim.

New York law permits a person, under certain conditions, to use physical force upon another person when and to the extent he reasonably believes such force to be necessary to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force by the other person.  Penal Law § 35.15(1). This justification defense is not available, however, where the other person's conduct "was provoked by the actor with intent to cause physical injury to another person," or the actor was the "initial aggressor" and did not subsequently withdraw from the encounter and effectively communicate such withdrawal to the other person.  Id. at § 35.15(1)(a), (b).  Where the person seeking to invoke the defense uses deadly force, his conduct is not justified unless he "reasonably believes that [the] other person is using or about to use deadly physical force."  Id. § 35.15(2).  Even in that case, however, "the actor may not use deadly physical force if he . . . knows that with complete personal safety, to oneself and others he . . . may avoid the necessity of so doing by retreating." Id.

Petitioner has failed to state, with any particularity, how his testimony would have established a justification defense, such that there is any probability -- let alone a reasonable one -- that the outcome of his trial would have been different had he testified.  Rather, he sets forth a series of conclusory assertions, claiming that he would have testified that "he

subjectively believed that deadly physical force was about to be used against him and his codefendant, that his belief was objectively reasonably, he did not initiate the altercation, Joe Comfort appeared to have a deadly weapon,  Joe comfort appeared to be attempting to use deadly force and that Petitioner could not retreat with complete safety as to himself and others." Traverse at 3.  These unsubstantiated, self-serving statements are directly contradicted by the strong evidence at trial which established that Petitioner and Gomez went to Schreiber's home in search of Comfort, looking for a fight, and used their weapons to initiate a violent confrontation with three unarmed men.   Moreover, as Respondent correctly points out, the jury heard testimony that just prior to Petitioner shooting Comfort, Comfort tried to use a lamp to intervene in the fight between Gomez, Schreiber, and Rumsey.  See Resp't Mem. of Law at 43.  This circumstance alone (assuming the lamp constituted a deadly weapon under the circumstances) –– without evidence that Petitioner satisfied his duty to retreat or was under no such duty –– was not sufficient to establish a justification defense.  There was no evidence presented at trial that Petitioner attempted to retreat or to help Gomez retreat, and Petitioner does not now point to any such evidence.  In fact, the evidence established that, after Comfort tried to use the lamp to intervene, Petitioner escalated the fight by firing his gun at Comfort several times and then chasing Comfort out of the house

while still firing the gun.  T.T. 942, 997-998.  Petitioner claims that, had he testified, he would have offered "contradicting testimony about what was made to look as if he chased Joe Comfort"; however, he has not endeavored to explain how he would have done so.   After all, Comfort's testimony was corroborated by the physical evidence which established that Petitioner chased Comfort out of the house while still firing the gun.  Finally, the Court notes that, after Petitioner was taken into custody, he made statements to police in which he recounted several versions of the events surrounding the shooting.  The jury had the opportunity to examine these statements at trial, and Petitioner has not explained how or if his testimony at trial would have altered or added to said statements.  Thus, Petitioner has failed to make a successful showing of prejudice under Strickland.  Petitioner's ineffective assistance of counsel claim is meritless and is dismissed on that basis.

## VI.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed.  Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.  See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also

hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     March 26, 2012
           Rochester, New York